NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| WYETH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MEDTRONIC, INC., et al.,<br><br>Defendants. | Civil Action No. 08-1021 (JAP)<br><br><br>MEMORANDUM OPINION |

This matter comes before the Court upon Plaintiffs Wyeth and Cordis Corporation's ("Plaintiffs") motion to amend their Complaint in order to substitute Medtronic Vascular, Inc. for Medtronic AVE, Inc. ("Medtronic AVE") and to add Medtronic USA, Inc. ("Medtronic USA") as a defendant. Defendants Medtronic, Inc. and Medtronic AVE (collectively, "Medtronic") do not oppose Plaintiffs' request to substitute Medtronic Vascular, Inc. for Medtronic AVE. However, Medtronic does oppose the addition of Medtronic USA as a defendant. The Court has fully reviewed and considered all arguments made in support of and in opposition to Plaintiffs' motion. The Court considers Plaintiffs' motion without oral argument pursuant to FED.R.CIV.P. 78. For the reasons set forth more fully below, Plaintiffs' motion is GRANTED.

I.  **Background and Procedural History**

This is a patent infringement case dealing with United States Patent Nos. 5,516,781 (the "'781 patent"), 5,563,146 (the "'146 patent") and 5,665,728 (the "'728 patent") (collectively, the "Morris patents" or the "patents-in-suit"). The Morris patents are directed to the use of rapamycin to treat the re-closure of coronary arteries, known as restenosis, following an angioplasty procedure. Plaintiffs sell a drug-eluting stent known as the CYPHER stent, which

they claim is covered by the Morris patents. Plaintiffs further claim that Defendants use of the XIENCE V stent (Abbott) and ENDEAVOR stent (Medtronic) infringes upon the patents-in-suit. At issue in the current motion, is Plaintiffs' request to add Medtronic USA, the Medtronic entity that apparently sells the allegedly infringing ENDEAVOR stent in the United States, as a defendant in this matter.[1]

Plaintiffs argue that even though their request to add Medtronic USA was made after the deadline for filing motions to amend had past, there is good cause to permit their amendment under FED.R.CIV.P. 16. Plaintiffs also claim that the addition of Medtronic USA as a defendant is warranted under FED.R.CIV.P. 15.

Plaintiffs argue that their failure to seek to add Medtronic USA to this litigation earlier did not result from a lack of diligence, but instead stems from the fact that it was not until January 5, 2011, when Medtronic responded to one of Plaintiffs' interrogatories, that Plaintiffs learned that Medtronic USA sold the ENDEAVOR stent in the United States. In this regard, Plaintiffs claim that Medtronic never previously identified Medtronic USA in its discovery responses, despite being obligated to do so.

For example, Plaintiffs argue that Medtronic did not list Medtronic USA as an entity likely to have discoverable information in its initial disclosures. Plaintiffs claim that while Rule 26(a)(1)(A)(I) only requires a party to identify "individual[s] likely to have discoverable information[,]" not entities, Rule 26(a)(1)(A)(ii) requires a party to either provide "a copy – or a description by category and location – of all documents, electronically stored information, and

---

[1] As noted above, Plaintiffs also seek to substitute Medtronic Vascular, Inc. for Medtronic AVE. Medtronic does not oppose this aspect of Plaintiffs' motion. As a result, this portion of Plaintiffs' motion is granted.

tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . . ." Plaintiffs note that Medtronic chose to identify the information detailed in Rule 26(a)(1)(A)(ii) by "category and location" rather than providing a copy of same. Plaintiffs, however, claim that Medtronic "hid the ball" with respect to information regarding which entity sold the ENDEAVOR stent in the United States by merely disclosing that "[f]inancial documents relating to the Endeavor stent" were available at "Medtronic's facilities, including Santa Rosa, California, and Minneapolis, Minnesota;" instead of "candidly revealing that sales documents were maintained by . . . Medtronic USA[.]" (Pl. Reply Br. at 4 (internal quotation marks and citations omitted)). Plaintiffs also argue that in identifying individuals likely to have discoverable information, Medtronic generally identified the individuals as Medtronic employees and did not identify them as employees of Medtronic USA.

In addition, Plaintiffs argue that Medtronic never claimed that it did not infringe the Morris patents because it did not sell the ENDEAVOR stent in the United States despite the fact that Plaintiffs propounded an interrogatory on Medtronic on August 17, 2009 that requested Medtronic to "'set forth in detail the complete legal and factual bases for your allegation that you have not infringed the claims of the patents in suit." (Pl. Br. at 2 (quoting Weiner Decl. Ex. C, Plaintiffs' First Set of Interrogatories to Defendants at Interrogatory No. 1)). Plaintiffs note that Medtronic has never supplemented its response to the aforementioned interrogatory to add such a defense even though Medtronic USA sells the ENDEAVOR stent in the United States.

Further, Plaintiffs contend that they attempted to conduct discovery regarding which Medtronic entity sold the ENDEAVOR stent in the United States. For example, Plaintiffs argue

that they deposed Dr. Josiah Wilcox, the individual identified by Medtronic in its initial disclosures as being knowledgeable about Medtronic's "'business and company history.'" (Pl. Reply Br. at 3 (quoting Weiner Decl. Ex. B at 8)). Plaintiffs claim that when they asked Dr. Wilcox which entity sold the ENDEAVOR stent in the United States, he incorrectly responded that "it was 'the Medtronic AVE, Inc. company that's changed its name to Medtronic CardioVascular.'" (*Id*. (quoting Vaghani Decl. Ex. 1, 11/23/10 Wilcox Dep. at 21:1-8)). Plaintiffs note that no efforts were made by Medtronic to correct this testimony. Indeed, Plaintiffs specifically point out that they "have, to date, received no errata sheet." (*Id*.) Plaintiffs also point to their deposition of Mark Gaterud, a Vice President of Medtronic Vascular, Inc. and the fact that when Gaterud was asked "'who sells the Endeavor stent: Medtronic, Inc., Medtronic AVE, Inc., or its successor or perhaps both of them?[,]'" he responded "'I don't know the legal structure at all. I know that we, Medtronic, sell it.'" (*Id*. (quoting Vaghani Decl. Ex. 2, 12/08/10 Gaterud Dep. at 62:9-12; 62:13-15)).

Plaintiffs also argue that there was nothing in Medtronic's public filings that identified a connection between Medtronic USA and the ENDEAVOR stent. Instead, Plaintiffs claim that the only reference to Medtronic USA in Medtronic's 10-K filings occurs at the very end of the 10-K where Medtronic USA is referenced in a list of over 150 subsidiaries of Medtronic. Similarly, Plaintiffs contend that there is nothing in the Instructions for Use for the Endeavor stent that reference Medtronic USA. Instead, the Instructions for Use list Medtronic, Inc.

Likewise, Plaintiffs claim that their past litigation history with Medtronic USA did not put it on notice that Medtronic USA sold the ENDEAVOR stent in the United States. Plaintiffs argue that while they have been involved in three lawsuits with Medtronic USA, none of those

prior suits gave Plaintiffs notice of Medtronic USA's role with respect to the ENDEAVOR stent. In this regard, Plaintiffs claim that two of the three litigations were filed before 2008, which is when the ENDEAVOR stent was first sold in the United States. As a result, Plaintiffs claim that no one was selling the ENDEAVOR stent in the United States at the time those litigations were filed and, as such, they could not put Plaintiffs on notice of Medtronic USA's role with respect to the ENDEAVOR stent. As for the third lawsuit, Plaintiffs contend that that matter did nothing to inform them about Medtronic USA's role with respect to the ENDEAVOR stent. Plaintiffs note that the third litigation,, which named both Cordis Corporation ("Cordis") and Medtronic USA, among others, as defendants, was voluntarily dismissed two months after it was filed and before any of the defendants filed answers or other responses. Moreover, Plaintiffs claim that the Complaint in that litigation contained very little information about Medtronic USA and no information about the ENDEAVOR stent.

  As a result, Plaintiffs claim that it was not until January 5, 2011, when Medtronic responded to Plaintiffs' interrogatories served on November 24, 2010, that they learned that Medtronic USA sells the ENDEAVOR stent in the United States. Plaintiffs argue that immediately upon obtaining this information from Medtronic, they sought Medtronic's consent to adding Medtronic USA as a defendant. Plaintiffs claim that when they learned that Medtronic's consent would not be forthcoming they promptly filed the instant motion. For these reasons, Plaintiffs argue that there is good cause to permit the addition of Medtronic USA under Rule 16 and that the addition of Medtronic USA as a defendant is further warranted under Rule 15(a) as Plaintiffs did not unduly delay in seeking the proposed amendment.

  Plaintiffs also claim that the addition of Medtronic USA is also appropriate under Rule

15(a) because neither Medtronic nor Medtronic USA will be prejudiced by Medtronic USA's addition as a defendant. In this regard, Plaintiffs argue that because Medtronic USA is a subsidiary of Medtronic Inc., very little additional discovery will be needed. Indeed, Plaintiffs claim that, at this juncture, they do not intend to depose any of Medtronic USA's employees. Instead, prior to the liability stage of trial, which is set to take place in September 2011, Plaintiffs claim that they will just seek to obtain supplemental interrogatory answers from Medtronic USA.

Medtronic opposes Plaintiffs' motion to add Medtronic USA as a defendant. Medtronic claims that Plaintiffs have failed to establish good cause to permit their proposed amendment at this stage of the proceedings. In this regard, Medtronic argues that, given Plaintiffs' litigation history with Medtronic USA, Plaintiffs have known since 2003 that Medtronic USA sells Medtronic's stent products in this United States. To support this contention, Medtronic cites to three cases that involved both Medtronic USA and Cordis. The first case was filed by Medtronic AVE on June 5, 2003. In that case, Medtronic AVE sued Cordis for patent-infringement and state-based claims. In December 2003, Medtronic USA was added as a plaintiff and the Second Amended Complaint alleged that "'Medtronic and Medtronic USA sell stent delivery systems in the United States.'" (Medtronic Opp. Br. at 2 (quoting Mathie Decl. Ex. 1, Second Amended Complaint, ¶ 4)). The second matter was filed by Medtronic USA and other Medtronic entities on June 11, 2007. In that matter, Medtronic USA and other related entities again sued Cordis for patent infringement. Medtronic contends that in this case, Medtronic disclosed the corporate relationship between Medtronic and Medtronic USA. The third litigation was filed on June 6, 2008 by Cardio Access. The case involved a patent infringement claim by Cardio Access against both Cordis and Medtronic USA.

In addition, Medtronic argues that contrary to Plaintiffs' claims, its discovery responses were proper and made in good faith. With respect to its initial disclosures, Medtronic notes that Rule 26(a)(1)(A)(I) does not require the disclosure of corporate entities, but instead only requires parties to identify individuals likely to have discoverable information. Medtronic claims that it did this and specifically disclosed five individuals with knowledge regarding Medtronic's sales information. Medtronic claims that it is not its fault that Plaintiffs did not depose these individuals.

Further, regarding its response to Plaintiffs' Interrogatory No. 1 served on September 1, 2009, Medtronic argues that this interrogatory did not ask it to identify Medtronic USA as the party who sells Medtronic stents in the United States. Instead, Medtronic claims that this interrogatory, which was not directed to Medtronic USA specifically or any non-party generally, asked Medtronic to provide Plaintiffs with a claim chart. Medtronic claims that it both objected to Plaintiffs' Interrogatory No. 1 and provided the requested claim chart. Medtronic contends that it was not until over 2 ½ years after Plaintiffs filed this litigation, that Plaintiffs requested information from Medtronic regarding the corporate entity that sold ENDEAVOR in the United States. Medtronic claims that it promptly responded to this inquiry[2] and identified Medtronic USA as the entity who sells the ENDEAVOR stent in the United States.

As a result, Medtronic claims that there is no good cause to permit Plaintiffs' belated request to add Medtronic USA as a defendant. In addition, for these reasons, Medtronic argues that Plaintiffs' proposed amendment is the product of undue delay. As such, Medtronic claims

---

[2]Medtronic notes that it did request an extension of time to respond to Plaintiffs' interrogatory, but that the extension it requested and obtained was only 1 week long and was sought because Medtronic's responses were due the week between Christmas and New Year.

that Plaintiffs' motion, as it pertains to the addition of Medtronic USA, should be denied.

Medtronic also argues that Plaintiffs' request to add Medtronic USA as a defendant should be denied because permitting this amendment would unfairly prejudice Medtronic. In this regard, Medtronic argues that if Medtronic USA is added as a defendant, then a number of Medtronic USA employees would be added into "the mix of persons with knowledge of discoverable information and potential trial witnesses[.]" (Medtronic Opp. Br. at 8). As such, Medtronic argues that it would likely have to present a number of Medtronic USA's employees for deposition. Medtronic claims that "[t]his is unduly prejudicial to Medtronic after the deadline has passed for fact discovery and in the midst of exchanging expert reports." (*Id*.)

## II.     Analysis

Plaintiffs seek to amend their Complaint in order to add Medtronic USA as a defendant in this matter. Because Plaintiffs motion was filed after the December 6, 2010 deadline for filing motions to amend the pleadings, Plaintiffs must meet the "good cause" standard set forth in Rule 16(b) for modifying a scheduling order before they will be permitted to amend their Complaint. The Court has broad "discretion in determining what kind of showing the moving party must make in order to satisfy Rule 16(b)'s good cause requirement." *Phillips v. Greben*, Civil No. 04-5590 (GEB), 2006 WL 3069475, *6 (D.N.J. Oct. 27, 2006). Whether good cause exists depends on the diligence of the moving party. Rule 16(b) advisory committee's note; *Hutchins v. United Parcel Service, Inc.*, No. 01-CV-1462 WJM, 2005 WL 1793695, *3 (D.N.J. July 26, 2005). The movant may establish good cause by demonstrating that "their delay in filing the motion to amend stemmed from 'any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling

Order.'" *Phillips*, 2006 WL 306945, at *6 (quoting *Newton v. Dana Corp. Parish Div.*, No. CIV. A. 94-4958, 1995 WL 368172, *1 (E.D.Pa. June 21, 1995) (internal quotation marks and citation omitted)). Further, in making this determination the Court "must consider F.R.Civ.P. 16(b)'s requirement that scheduling orders only be modified for 'good cause' in conjunction with Rule 15(a)'s directive that leave to amend a complaint be 'freely given.'" *Reynolds v. Borough of Avalon*, 799 F.Supp. 442, 450 (D.N.J. 1992).

Pursuant to FED.R.CIV.P. 15(a)(2), leave to amend the pleadings is generally given freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id*. However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

In deciding whether to grant leave to amend under Rule 15(a)(2), "prejudice to the non-moving party is the touchstone for the denial of the amendment." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction. *See Long*, 393 F.3d at 400. Delay alone, however, does not justify

denying a motion to amend. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Rather, it is only where delay becomes "'undue,' placing an unwarranted burden on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party" that denial of a motion to amend is appropriate. *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir. 1984). Moreover, unless the delay at issue will prejudice the non-moving party, a movant does not need to establish a compelling reason for its delay. *See Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981).

      Here Plaintiff claims that good cause exists to permit the proposed addition of Medtronic USA as a defendant because, despite their diligent efforts, Plaintiffs did not learn that Medtronic USA was the Medtronic entity that sold the allegedly infringing ENDEAVOR stent in the United States until January 5, 2011. For this reason, Plaintiffs also claim that they did not unduly dely in seeking the proposed amendment. In contrast, Medtronic argues that Plaintiffs' proposed amendment is not supported by good cause and that Plaintiffs unduly delayed in seeking to add Medtronic USA as a defendant. In support of this argument, Medtronic relies on Cordis' past litigation history with Medtronic USA as well as Plaintiffs' alleged failure to conduct discovery that would have disclosed Medtronic USA's role with respect to the ENDEAVOR stent.

      The Court first examines Medtronic's claim that Cordis' prior litigation history with Medtronic USA put Plaintiffs on notice of Medtronic USA's role concerning the sale of the ENDEAVOR stent in the United States. As an initial matter, the Court notes that none of the matters referenced by Medtronic involved the ENDEAVOR stent. In fact, the first two cases were filed before the ENDEAVOR stent was even offered for sale in the United States. Further, there is nothing in Medtronic's opposition which suggests that the second and third litigations

even involved stent products. Instead, with respect to the second litigation, Medtronic merely claims that that case "disclosed the corporate relationship between Medtronic and Medtronic USA." (Medtronic Opp. Br. at 3). With respect to the third, Medtronic simply notes that "Cardio Access, a patent holder, sued Medtronic USA and Cordis for patent infringement in the same lawsuit." (*Id*.) The Court finds the disclosure of the corporate relationship between Medtronic and Medtronic USA as well as the fact that Medtronic USA and Cordis were co-defendants insignificant in relation to the question of whether Plaintiffs were on notice of Medtronic USA's role in selling the ENDEAVOR stent in the United States.

The best case presented by Medtronic as evidence of Plaintiffs' notice of Medtronic USA's role in selling the ENDEAVOR stent in the United States is the first matter referenced by Medtronic in its opposition. That matter was filed on June 5, 2003 by Medtronic AVE against Cordis (the "2003 matter"). In that case, the Second Amended Complaint included a specific allegation that "'Medtronic and Medtronic USA sell stent delivery systems in the United States[,]'" an allegation that Cordis admitted "on information and belief in their answer." (*Id*. at 2 (quoting Mathie Decl. ¶ 2 Ex. 1, Second Amended Complaint, ¶ 4)). However, as noted above, the 2003 matter did not involve the ENDEAVOR stent. Indeed, the ENDEAVOR stent was not offered for sale in the United States until approximately 5 years after the 2003 matter was filed. Moreover, in the 2003 matter, Medtronic did not allege that Medtronic USA exclusively sold Medtronic's stent delivery systems in the United States. Instead, Medtronic conceded that Medtronic also sold those products. As such, while the 2003 matter may have given Cordis some notice that Medtronic USA had some involvement in the sale of certain stent delivery systems, it certainly did not put Plaintiffs on notice that Medtronic USA sold the ENDEAVOR stent in the

11

United States.  As a result, the Court shall not bar Plaintiffs from amending their Complaint to add Medtronic USA as a defendant based on Cordis' prior litigation history with Medtronic USA.

Further, the Court finds that Plaintiffs were reasonably diligent in their efforts to attain information regarding which Medtronic entity sold the Endeavor stent in the United States. While Plaintiffs did not depose four individuals who were identified in Medtronic's initial disclosures as being knowledgeable regarding "[f]inancial information regarding the Endeavor stent" and one individual who was identified as being knowledgeable concerning "[s]ales information regarding the Endeavor stent[,]" Plaintiffs did question other witnesses about the Medtronic entity that sold the Endeavor stent.  For example, Plaintiffs questioned Dr. Josiah Wilcox, who was identified in Medtronic's initial disclosures as being knowledgeable about the "[o]peration, design, development, and use of the Endeavor device; [and] business and company history[,]" about Medtronic's sale of the Endeavor stent in the United States.  Specifically, Plaintiffs asked Dr. Wilcox: "Do you happen to know who sells the Endeavor stent in the U.S.?" (Wilcox Tr. 21:1-2).  Dr. Wilcox responded that "[o]ur sales reps from the coronary peripheral division of Medtronic CardioVascular" sold the Endeavor stent in the United States.  (*Id*. at 21:3-4).  Dr. Wilcox also confirmed that Medtronic CardioVascular used to be known as Medtronic AVE.  Despite the fact that Dr. Wilcox's testimony was plainly inaccurate, Medtronic made no effort to correct the testimony not even by way of a deposition errata sheet.

While in retrospect Plaintiffs may have gotten better information regarding which corporate entity sold the ENDEAVOR stent by deposing one or more of the individuals specifically identified by Medtronic as being knowledgeable about financial or sales information

regarding the ENDEAVOR stent, the Court is aware that parties are not permitted to take an unlimited number of depositions. As such, parties must pick and choose who to depose based on the information available to them. Plaintiffs obviously thought they could obtain the information they needed from other witnesses and attempted to do so. Under the circumstances of this case, where none of the five witnesses identified by Medtronic as being specifically knowledgeable of financial and sales information pertaining to the ENDEAVOR stent were identified as being associated with Medtronic USA, the Court does not believe that Plaintiffs' decision to forego their depositions in favor of others was unreasonable.[3]

The Court also finds that Plaintiffs were reasonably diligent in their other efforts to discover information relevant to the sale of the ENDEAVOR stent in the United States. In reaching this conclusion, the Court notes that there was nothing in Medtronic's initial disclosures that would put Plaintiffs on notice of Medtronic USA's role selling the ENDEAVOR stent in the United States. While Medtronic correctly notes that Rule 26(a)(1)(A)(I) only requires parties to identify **individuals** likely to have discoverable information, not corporate entities, there is nothing in that Rule which prevents parties from identifying corporate entities likely to have discoverable information as well. In fact, while Medtronic chose not to identify Medtronic USA in its Rule 26(a)(1)(a)(I) disclosures, it did specifically identify "Cordis Corporation" and "Wyeth" in its Rule 26(a)(1)(a)(I) list of "**Individuals Likely to Have Knowledge of Discoverable Facts.**" (Weiner Decl. ¶3, Ex. B., Defendant Medtronic Inc. and Medtronic AVE, Inc.'s Initial Disclosures at 2,3 (emphasis in original)).

---

[3]As discussed in further detail below, the five individuals referenced by Medtronic were identified in Medtronic's initial disclosures with addresses belonging to "Medtronic." In the initial disclosures, the term "Medtronic" is used explicitly to refer to "Medtronic, Inc."

Further, in describing the location of its "[f]inancial documents relating to the Endeavor stent[,]" as required by Rule 26(a)(1)(A)(ii), Medtronic referred to "Medtronic's facilities, including Santa Rosa, California, and Minneapolis, Minnesota." (*Id*. at 9). Plaintiffs claim that by "vaguely" referring to "'Medtronic's facilities'" in their initial disclosures, Medtronic purposefully "hid the ball" regarding Medtronic USA's involvement with the sale of the ENDEAVOR stent in the United States. (Pl. Reply Br. at 4). The Court, however, disagrees; though this disagreement does not behoove Medtronic. The Court, in fact, finds nothing vague about Medtronic's reference to "Medtronic's facilities." In its initial disclosures, Medtronic used the term "Medtronic" to refer specifically to Medtronic, Inc. (*Id*. at 1).[4] Having given it this definition, the term "Medtronic" can have no other meaning within Medtronic's initial disclosures. As such, the phrase "Medtronic's facilities" can only reasonably be understood to mean Medtronic, Inc.'s facilities. There would, therefore, be no reason for Plaintiffs to think that any of the aforementioned financial documents would be housed in a Medtronic, USA facility because no such facility was included in Medtronic's description of the location of that category of documents. As a result, nothing about Medtronic's location description put Plaintiffs on notice of Medtronic USA's involvement with the sale of the ENDEAVOR stent in the United States. If Medtronic intended otherwise, then their initial disclosures plainly hid the ball.

In addition, while Plaintiffs sought to obtain discovery from Medtronic regarding its claims and defenses, Medtronic never raised a claim of non-infringement based on the fact that Medtronic USA, not Medtronic, sold the accused ENDEAVOR stent in the United States.

---

[4]As a reminder, the Court uses the term "Medtronic" to refer to both Defendant Medtronic, Inc. and Medtronic AVE, Inc. throughout this opinion.

14

Further, nothing in Medtronic's 10-K filings identified a connection between Medtronic USA and the ENDEAVOR stent and even the Instructions for Use associated with the ENDEAVOR stent referred to Medtronic, Inc., not Medtronic USA.

The Court is mindful of the fact that it was not until November 24, 2010 that Plaintiffs served an interrogatory that specifically asked Medtronic to identify the corporate entity responsible for selling the ENDEAVOR stent in the United States. The Court, however, is also mindful of the fact that based on the information available to them (*i.e.*, Medtronic's initial disclosures, Medtronic's 10-Ks, the Instructions for Use associated with the Endeavor Stent, etc.), Plaintiffs had substantially no reason to believe that any entity other than Medtronic, Inc. or Medtronic AVE would be listed in response to this question. Under these circumstances, the Court finds that Plaintiffs were reasonably diligent in seeking to make the proposed amendments. As a result, the Court finds that good cause exists to permit Plaintiffs to amend their Complaint to add Medtronic USA as a defendant. For the same reasons, the Court finds that Plaintiffs did not unduly delay in seeking to add Medtronic USA as a defendant.

Therefore, the sole question left for the Court then is whether Medtronic would be unfairly prejudiced by Plaintiffs' proposed amendment. The Court finds that it would not as the addition of Medtronic USA will not require Medtronic to expend significant additional resources to conduct discovery or prepare for trial; nor will it significantly delay these proceedings. While Medtronic contends that the addition of Medtronic USA will likely result in several Medtronic USA employees needing to be made available for deposition given their potential to be called as trial witnesses, Plaintiffs contend that no additional depositions will be required prior to the liability stage of trial, which is set to occur in September 2011. Instead, Plaintiffs merely seek

permission to obtain supplemental interrogatory responses.  In light of the limited amount of additional discovery that will be required by Medtronic USA's addition and the fact that adding Medtronic USA as a defendant will not delay the trial of these proceedings, the Court shall permit Plaintiffs to add Medtronic USA as a defendant in this matter.  The Court shall also permit Plaintiffs to obtain supplemental interrogatory answers from Medtronic USA on interrogatories that Plaintiffs have already propounded on Medtronic.  At this time, no additional discovery shall be permitted.

### III.     Conclusion

For the reasons stated above, Plaintiffs' motion to amend their Complaint is GRANTED.  An appropriate Order follows.


Dated: May 2, 2011


        s/  Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**